# Staunton

## G. W. Bryan, Trustee, Etc. v. Pearl D. Jackson, Et Als.

September 10, 1941.

Record No. 2383.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

The opinion states the case.

*W. E. Neblett,* for the appellant.

*W. Henry Cook,* for the appellees.

BROWNING, J., delivered the opinion of the court.

G. W. Bryan, trustee in bankruptcy of C. H. Jackson, bankrupt, filed a bill in chancery praying that the deed from C. H. Jackson to his wife, Pearl D. Jackson, dated December 3, 1938, be set aside and annulled and that H. C. Coleman be required to release a certain deed of trust which the said Jackson and wife had executed to trustees conveying the land, hereinafter referred to, to secure certain indebtedness of the grantors, the said H. C. Coleman having acquired the said land by purchase from

Mrs. Jackson, and the validity of her deed thereto was challenged.

A recital of the facts relating to the various phases of the case and the attendant circumstances is a refutation of the contention of the appellant and a sustention of the decree of the chancellor, confirming the report of the commissioner in chancery, to whom the issues in the cause were referred.

C. H. Jackson and his wife, Pearl D. Jackson, went from Virginia to Myrtle Beach, South Carolina, to engage in business. The husband established and operated, at times, a store, which he called "Jackson's Log Station". His wife conducted, in the rear part of the building, a guest house and cafe. Jackson divided his time between trafficking in tobacco and his store. He was unsuccessful in both. His wife, apparently a provident person, and a good business woman, was successful from the start. Her husband continually borrowed money from her to operate his business. These loans were represented by checks drawn by her for various amounts for which he executed his notes, until December 1, 1937, when he made one note for the sum of $1,225.00, which was the aggregate of a number of smaller ones. At the bottom of this note were these words: "Farm 163 acres in Virginia, Lunenburg County, pledged as security."

C. H. Jackson owned a tract of land of 163 acres in Lunenburg county, Virginia, which he conveyed to his wife on December 3, 1938. This transaction was had in the office of Mr. Perry A. Ozlin, an attorney at law with offices at Chase City, Virginia. At this time Mrs. Jackson, through Mr. Ozlin, delivered to her husband the various notes which she held against him, marking each one "paid in full December 3, 1938," and affixing her signature.

Dr. H. C. Coleman, an optometrist of South Hill, Virginia, had, through a tenant, heard of the tract of land and become interested in purchasing it. This was consummated on December 23, 1938, when Mrs. Jackson

executed a deed to him. The consideration was the payment to her of $1,350.00 in cash and the assumption of the payment of the deed of trust indebtedness of $900.00. She had assumed the payment of the trust deed debt when her husband conveyed the land to her.

On February 6, 1939, some of the creditors of C. H. Jackson filed a petition in bankruptcy in the Federal District Court in South Carolina, at which time C. H. Jackson was adjudged a bankrupt. His personal property in South Carolina was sold by the trustee. The proceeds did not pay his creditors in full and this suit ensued.

The deed from Jackson to his wife was attacked as fraudulent. It was alleged to have been made with intent to hinder, delay and defraud his creditors. It was also attacked as a preferential act, and it was charged that it was without consideration deemed valuable in law. The deed from Mrs. Jackson and her husband to Dr. H. C. Coleman was asked to be set aside and annulled as having been made with the intent to create a preference in favor of Mrs. Jackson. It was admitted to record on May 1, 1939, which was subsequent to the docketing and recording of a *lis pendens,* which was on April 17, 1939, and therefore it was alleged not to be a *bona fide* transaction as provided by the provisions of the Bankrupt Act.

The commissioner in chancery reported that the deed from Jackson to his wife was not fraudulent; that the evidence completely rebutted the legal presumption of fraud in transactions of this character. He further held that this conveyance constituted a voidable preference in favor of Mrs. Jackson; that Dr. H. C. Coleman was a *bona fide* purchaser from the debtor's transferee for a present fair equivalent value, $2,250.00; that he knew nothing of the financial condition of Mr. Jackson or of the personal affairs of Mr. and Mrs. Jackson; and that the deed should not be set aside, and that the *lis pendens* did not affect the *bona fides* of the transaction. The com-

missioner further reported that the evidence showed that Mrs. Jackson had reasonable cause to believe that her husband was insolvent at the time the transfer was made to her, and on account of the preference in her favor coming within the four-months period prior to the bankruptcy adjudication, the trustee was entitled to recover a judgment against her for the value of the property transferred to her, which was $1,350.00. Interest on the judgment was only allowed from the date of the decree. The chancellor confirmed this report in all respects.

Section 5184 of the Code of Virginia of 1936 (Michie), which is peculiarly applicable to the situation here, is as follows:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing given with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchasers, or other persons, their representatives, or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor."

The applicable provisions of the bankruptcy laws are as follows: part of subsection b, section 60, as amended by Acts of Congress, June 22, 1938, chapter 575, section 1, 52 Stat. 869:

"Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, *except a bona fide purchaser from a lienor of the debtor's transferee for a present fair equivalent value; provided, however, that where such purchaser or lienor has given less than such value, he shall nevertheless have a lien upon such property, but only to the ex-*

*tent of the consideration actually given by him.''* (Ital-. ics supplied.)

And subsection d, (6), section 67, as amended by Acts of Congress, June 22, 1938, chapter 575, section 1, 52 Stat. 875:

"A transfer made or an obligation incurred by a debtor adjudged a bankrupt under this Act, which is fraudulent under this sub-division d against creditors of such debtor having claims provable under this act, shall be null and void against the trustee, *except as to a bona fide purchaser, lienor, or obligee for a present fair equivalent value; provided, however, that such purchaser, lienor, or obligee, who without actual fraudulent intent has given a consideration less than fair, as defined in this sub-division d, for such transfer, lien, or obligation, may retain the property, lien, or obligation as security for repayment.''* (Italics supplied.)

It is at once seen that a purchaser occupying the status of Dr. H. C. Coleman in the present case comes within the saving clause of the Virginia statute and within the exceptions in the bankruptcy laws. That this is equitable, we think, cannot be gainsaid. C. H. Jackson, at the time the indebtedness was contracted, which was the cause of his being thrown into bankruptcy, resided in the state of South Carolina. His creditors resided there. His business was conducted there and the indebtedness accrued there. Both Mr. and Mrs. Jackson were unknown to Dr. Coleman until December 22, 1938, when they appeared at his office in South Hill, Virginia, in an effort to sell the land, the title to which was in Mrs. Jackson. He had the title examined by a competent attorney at law, who furnished him a written opinion that Mrs. Jackson had a good and merchantable title, clear of liens except the trust deed debt of $900.00. There was no way for him or his attorney to know that a predecessor in title to Mrs. Jackson would become a bankrupt through proceedings in a distant state and thus his title to the land which he openly and innocently purchased would become

imperiled through no fault of his. If the laws of the land did not protect the purchaser in such circumstances, the buying of property would be but a hazardous adventure.

The court gave the trustee in bankruptcy a judgment against Mrs. Jackson for $1,350.00, the amount which she derived from the sale. This was all that the court could do and it was all that it ought to have done.

The case of *Parksley Nat. Bank* v. *Parks,* 172 Va. 169, 200 S. E. 629, involved facts very similar to those in the present case, except that they were not so strong as to the *bona fides* of the transaction there as those here. The trust deed in that case, made by Dr. Parks to secure a note evidencing his indebtedness to his wife, was upheld in the face of an attack by his other creditors alleging that it was made with intent to hinder, delay and defraud them. There was, however, no bankruptcy feature in that case.

The deed from C. H. Jackson to Mrs. Jackson was valid but Mrs. Jackson had to suffer purely because of the arbitrary provision of the bankruptcy laws fixing the period of time before the adjudication within which such conveyance would be a preferential act upon the part of the bankrupt.

In *Parksley Nat. Bank* v. *Parks, supra,* this is said: ██ ██ "Where it is shown that the wife has actually loaned her money to her husband, upon his express contemporaneous promise to repay the loan, she becomes his creditor to the same extent as any other person advancing the money under like circumstances. It is as much the duty of a husband to be just to his wife as to other persons. A conveyance of a husband's property, either in payment of a loan made to him by his wife, or as security for such a loan, with a promise of repayment by him, is a valid conveyance, and not subject to successful attack by his other creditors."

The case of *Carey* v. *Donohue,* 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726, is applicable to the present case and

is authority for our interpretation of the effect of the bankruptcy laws. See also *Van Iderstine* v. *National Discount Co.*, 227 U. S. 575, 582, 33 S. Ct. 343, 57 L. Ed. 652, 654.

The *lis pendens* was without effect. A *lis pendens* makes static the record as it is when it is filed. Any subsequent paper affecting title is charged with notice. Here the title was in Mrs. Jackson at the time she conveyed the land to Coleman. He was an innocent purchaser for value, without notice, and regardless of the *lis pendens* he got a good title. He was a complete purchaser. A *lis pendens* is in its effect prospective, not retroactive.

The trial court was plainly right in all its rulings. The decree is affirmed.

*Affirmed.*